UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAVOYR WEDDINGTON,

                        Plaintiff,                    18-cv-10055 (PKC)

     -against-                                        OPINION AND ORDER


SENTRY INDUSTRIES, INC.,

                        Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

               This case stems from plaintiff Savoyr Weddington's purchase and use of earbuds manufactured by defendant Sentry Industries, Inc. ("Sentry").  Weddington alleges that when she finished listening to music with her newly purchased earbuds and attempted to remove them, an earpad detached from one of the earbuds and became lodged in her ear canal, causing her various injuries.  (Am. Compl. ¶¶ 3.1-3.2.)  Sentry now moves, pursuant to Rule 56, Fed. R. Civ. P., for summary judgment against Weddington on her single claim of negligence.  At argument, Weddington's counsel made plain that she relies only on a failure-to-warn-or-instruct theory of negligence.  For the reasons set forth below, Sentry's motion will be granted.

BACKGROUND

               The Court draws all reasonable inferences in favor of non-movant Weddington.

               Weddington alleges that she sustained a personal injury on November 27, 2015 while using a pair of stereo earbuds distributed by Sentry, which she purchased at a Family Dollar store in Irving, Texas.  (Doc 78 ¶ 1.)  Specifically, she alleges that she used the earbuds as intended—she first inserted them into her ears to listen to music, and after she finished listening

to music, she attempted to remove the earbuds, at which point the "rubber earpad" of one of the earbuds came loose from the earbud and lodged in her ear canal, causing her injuries.[1]  (Id. ¶ 4.)

As relevant here, it is undisputed that Weddington "understood how to use the earbuds, by plugging them into her phone and placing the two earbuds into her ears."  (Doc 78 ¶ 39.)  Weddington also "understood that the earpads were interchangeable as to which earpad went into each ear . . . . [and] that the earbuds came with pre-installed earpads and additional earpads of different sizes."  (Id. ¶ 41.)  Weddington "knew that if she desired, the pre-installed earpads could be removed from the earbud stems and replaced with another size she found more comfortable in her ears."  (Id. ¶ 42.)  During her deposition, when asked whether the earpads were "properly affixed" to the earbud stems, Weddington stated that the earbuds looked "normal."[2]  (Id. ¶ 43.)  Weddington also felt that the medium-sized earbuds that came affixed to the brand-new earbuds were the right size for her—that although "[t]here was a smaller and a bigger, the ones that were on there seemed that they would fit." (Doc 65-16 at 93.)  Weddington then placed the earbuds into her ears "very lightly" and "directly," without particular force or twisting.  (Doc 78 ¶ 46.)  She experienced no issues with the earbuds during the short time they were in her ears and removed the earbud first from her left ear without incident.  (Doc 78 ¶¶ 48-49.)[3]  She alleges that when she removed the earbud from her right ear, however, the earpad did not stay affixed to the stem of the earbud and lodged itself in her ear.  (Id. ¶ 51.)

---

[1] The "rubber" earpads from the Amended Complaint appear to actually be silicone earpads, which are designed to cover the small speakers within the earbuds, encased in plastic housings known as stems.  (Doc 78 ¶ 14.)

[2] While Weddington responds that the transcripts states "*probably* affixed," she notably does not argue that Sentry's counsel actually said "*probably* affixed."  The Court has reviewed Sentry's submitted video excerpt (Doc 65-21) and agrees with Sentry that there was a transcription error.  Sentry's counsel clearly asks Weddington whether the earbuds were "*properly* affixed."  (Id. at 0:45 ("So they looked like they were properly affixed, fair to say?").)

[3] The Court notes that Weddington "takes issue" with some of the statements of fact cited here but does not explain or refute the statements apart from simply writing "(review video)."  (See Doc. 78 ¶¶ 44-49).  The Court notes that it has indeed reviewed the video—which presumably refers to the testimony video excerpt submitted by Sentry—and finds that Weddington's nondescript objections aside, these factual statements are supported by the record, by both the transcript and video excerpt of Weddington's sworn deposition.

SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks omitted).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation

marks omitted).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Simsbury-Avon Pres. Soc'y, 575 F.3d at 204 (internal citations omitted).

DISCUSSION

As a threshold matter, although Weddington raises three theories of negligence in her Amended Complaint (negligent design, negligent quality control, and failure to warn), counsel for Weddington represented during the January 27, 2022 oral argument that at the summary judgment stage, Weddington was only asserting the failure-to-warn-or-instruct theory of negligence.  (Transcript of Jan. 27, 2022 Hearing at 2.)  Accordingly, the other theories are deemed withdrawn and the Court will only address the failure-to-warn-or-instruct theory of negligence.

"Under New York's modern approach to products liability, a product has a defect that renders the manufacturer liable for the resulting injuries if it . . . is not accompanied by adequate warnings for the use of the product."  In re New York City Asbestos Litig., 27 N.Y.3d 765, 787 (2016).  The manufacturer's duty to warn extends to "latent dangers from foreseeable uses of its products," Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 297 (1992), as well as "dangers arising from the product's 'intended use or a reasonably foreseeable unintended use," In re New York City Asbestos Litig., 27 N.Y.3d at 788.

As relevant here, in addition to proving the existence of a duty, a failure-to-warn-or-instruct plaintiff must also prove that the failure to warn or instruct proximately caused the

plaintiff's injuries.  For example, "where the injured party was fully aware of the hazard through general knowledge . . . lack of a warning about that danger may well obviate the failure to warn as a legal cause of an injury resulting from that danger. . . . [because] courts could as a matter of law decide that a manufacturer's warning would have been superfluous given an injured party's actual knowledge of the specific hazard that caused the injury." Liriano v. Hobart Corp., 92 N.Y.2d 232, 237 (1998).

As noted above, Weddington not only knew how the earbuds worked, but also consciously decided that out of the three different sizes of detachable earpads that came in the packaging, the medium-sized earpads, which looked "normal," were the correct earpads for her ears.  Therefore, based on Weddington's own deposition testimony, a reasonable jury could not find that any failure to warn on Sentry's part proximately caused Weddington's alleged injuries. Even if Sentry had included warnings or instructions that the earpads could detach, Weddington would not have proceeded differently and prevented the detachment—Weddington knew that the earpads were detachable, confirmed to herself that the medium-sized detachable earpads were the right size for her, and inserted what appeared to be normal earbuds lightly into her ear, without any particular force or twisting.

The Court notes that Weddington, in her affidavit submitted in opposition to the motion for summary judgment, states that: (1) she "did not think there was any risk of an ear tip disconnecting from an earbud and becoming lodged," (2) she would have "read . . . and minimize[d]" risks of detaching earbuds upon reading about them, and (3) she would have "taken steps to ensure that the ear tips were properly attached to the earbuds. . . . [and] also tested the other size ear tips to find the best-fitting size for [her] ears, rather than simply inserting the earbuds into [her] ears."  (Doc 71-8 ¶¶ 10-12.)

But it is also true that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Brandon v. Kinter, 938 F.3d 21, 33 n.9 (2d Cir. 2019) (quoting Hayes v. N.Y.C. Dep't Corr., 84 F.3d 614, 619 (2d Cir. 1996)). Even drawing reasonable inferences in Weddington's favor, Weddington's affidavit contradicts her previous deposition testimony that she not only knew how these types of earbuds with detachable earpads functioned, but that she also actively considered the different *sizes* of the detachable earpads that came in the packaging and consciously chose the medium-sized earpads for her specific ear size. In contrast, Weddington's affidavit claims that she did not think there was "*any risk* of an ear tip disconnecting from an earbud and becoming lodged." (Doc 71-8 ¶ 10 (emphasis added).) Such "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." Hayes, 84 F.3d at 619 (quoting Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)).

Finally, Weddington's own affidavit conflicts with itself and suggests that even with warnings or instructions, she would have ultimately inserted the medium-sized earpads into her ear. As noted, Weddington first states in her affidavit that she "inserted the earbuds into [her] ears because [she] did not think there was any risk of an ear tip disconnecting from an earbud." (Id.) Weddington, however, also states in her affidavit that "[i]f there had been a warning included . . . that the ear tips attached to the earbuds could become lodged in a person's ear canal, I would have taken steps to ensure that the ear tips were properly attached to the earbuds. *I would have also tested the other size ear tips to find the best-fitting size for my ears*, rather than simply inserting the earbuds into my ears." (Id. ¶ 13 (emphasis added).)

How would Weddington have "tested" to find "the best-fitting size" earpads among the three sizes provided?  Instructively, Weddington submits, in criticizing the methods of S-E-A, Sentry's engaged testing firm, that "[s]imple logic states that a set of ear pads will fit differently in different-sized ear canals," and that any testing should be done with "ears or ear canals similar to Ms. Weddington's."  (See Doc 71 at 17.)  Here, Weddington acted reasonably and used her own ears to find the best fit.  She examined the larger and smaller earpads and decided that the pre-affixed medium-sized earpads were best for her.  And consistent with her assessment, she experienced no issues with the medium-sized earpads during the time they were in her ears.  She does not offer any instruction or warning that would have prevented her injury.

Accordingly, the Court concludes that no reasonable jury could find that the lack of warnings or instructions proximately caused Weddington's alleged injuries—no reasonable jury could find, based on Weddington's own deposition testimony and her affidavit, that warnings or instructions as to the detachability of earpads would have caused Weddington to act differently and prevent her alleged injuries.  Consequently, the Court also concludes that there is no dispute regarding a material fact regarding Weddington's negligence claim.  Sentry's summary judgment motion as to the negligence claim will be granted.

CONCLUSION

The Court has considered all the arguments of the parties, whether or not they are expressly referenced here.  Sentry's motion for summary judgment against Weddington on her sole claim of negligence is GRANTED.  The Clerk is respectfully directed to terminate the motion (Doc 65), enter final judgment in favor of Sentry and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:   New York, New York
         February 16, 2022